Christopher L. BAUER,
Plaintiff–Appellant,

v.

VARITY DAYTON–WALTHER CORPO-
RATION, formerly Dayton–Walther
Corporation, Defendant–Appellee.

No. 96–5603.

United States Court of Appeals,
Sixth Circuit.

Argued June 10, 1997.

Decided July 8, 1997.

Kenneth W. Scott, (argued and briefed),
Scott & Jahn, Florence, KY, for Plaintiff–
Appellant.

Jeffrey A. Savarise, (argued and briefed),
Henry S. Alford, Greenebaum, Doll & Mc-
Donald, Louisville, KY, Henry S. Alford,
(briefed), Middleton & Reutlinger, Louisville,
KY, for Defendant–Appellee.

Paul H. Tobias, (briefed), Tobias, Kraus &
Torchia, Cincinnati, OH, Donna R. Lenhoff,
(briefed), Judith L. Lichtman, Women's Le-
gal Defense Fund, Washington, DC, for Ami-
cus Curiae.

Before: KRUPANSKY, NELSON, and
BOGGS, Circuit Judges.

## OPINION

BOGGS, Circuit Judge.

The plaintiff below, Christopher Bauer, ap-
peals the district court's award of summary
judgment to his former employer, Varity
Dayton–Walther Corporation ("Varity"), on
his claim brought under the Family and
Medical Leave Act of 1993 ("FMLA"), 29

U.S.C. § 2601 *et seq.* For the reasons discussed below, we affirm.

## I

Bauer began working for Varity on April 27, 1992. He was assigned shifts that included both weekends and ten-hour days, and he sometimes worked fifty-five-hour weeks. Bauer's employment with Varity was governed by his union's collective bargaining agreement, which specified a "no-fault" attendance policy. Under that policy, employees were to be assessed points for violations of the attendance policy without regard to the reason for the absence; the accumulation of six points in a six-month period was grounds for automatic termination of employment, although the employee would be afforded a discharge hearing at which he or she could prove that any of the absences were for a reason permitted under the agreement.

Bauer was dismissed from his job in January 1994 for excessive absenteeism. However, his union successfully challenged the dismissal, and he was reinstated on April 18, 1994, with his "absenteeism points" starting from zero at that point. He received one point for taking an afternoon off on April 28 to visit his ailing grandfather, and another point on May 14 for taking time off to take his girlfriend to a concert. He does not contend that either assessment was in error.

While he worked at Varity, Bauer suffered from intermittent episodes of hematochezia, or the passage of bloody stools. Bauer alleges that his next three absences were incurred as a result of this condition, and he argues that the assessment of points for those absences violated the FMLA. Bauer received his third point for a June 18 absence. He had been experiencing intermittent rectal bleeding for three weeks prior to that date. He alleges that he was passing blood "pretty bad" on June 18, although he also concedes that he stayed home on that day because he was sick with a cold, and that the bleeding alone would not have caused him to stay home that day.

He received his fourth point for a June 21 absence. He reported to work on time that morning, but began to experience heavy bleeding while he was at work, and left work early. Bauer concedes that, despite the bleeding, he could have performed the essential functions of the job to which he was assigned on that day, cleaning line operator. He made an appointment with his physician, Dr. Thomas Eckert, to determine the cause of the problem. The appointment was scheduled for July 11, the earliest date on which Dr. Eckert was available.

Bauer took the morning of July 11 off to report to Dr. Eckert for his examination, and was assessed his fifth point for doing so. He had not attempted to schedule the appointment for an off-day or for after 3:00 p.m., when his shift ended. At the examination, Dr. Eckert diagnosed Bauer with hematochezia, noting that over the last week Bauer had had "daily episodes of hematochezia with no pain on defacation [sic]." Dr. Eckert advised Bauer that he needed to undergo a flexible sigmoidoscopy, an invasive procedure performed on an out-patient basis at a hospital. Bauer agreed to the procedure, and scheduled it for July 14, a work day. In preparation for the procedure, which Bauer understood to be "surgery," he signed a hospital pre-admission slip and purchased Nulytely, a medication prescribed to him by Dr. Eckert to take the night before the procedure.

When Bauer returned to work on July 11, he told his supervisor, Rick Kelly, that he needed time off on July 14 for the procedure, and showed Kelly the pre-admission slip and the prescription. Kelly did not take his predicament seriously, and warned Bauer that he would be assessed a point if he was absent. Bauer then canceled the procedure.

On July 24, 1994, a Sunday, Bauer failed to report to work. He was assessed two points, one for not reporting to work and another for not informing his supervisor that he would be absent. Since he had accumulated seven points, he was given a termination hearing on August 5, and his employment was terminated on the same day. At that hearing, Bauer argued that he was absent on July 24 because the battery in his car had died. However, he now argues that the reason for that absence was that nobody had informed him that he was scheduled for work on that day.

After his employment with Varity ended, Bauer performed some part-time work for various employers and ultimately obtained full-time work as a painter with Toyota in February 1995. Bauer admitted in his deposition in June 1995 that he had not sought additional medical treatment for his condition since his discharge from Varity, and his counsel admitted in oral argument before this court that he had not sought treatment to that day. Although he continues to suffer from rectal bleeding, he concedes that he is able to perform the essential functions of his position at Toyota, and he has not missed work for any health-related reason.

Bauer filed a complaint against Varity in the United States District Court for the Eastern District of Kentucky on December 29, 1994, alleging that Varity had violated the FMLA by terminating his employment. The district court awarded summary judgment to Varity and denied Bauer's motion to amend the judgment, and Bauer now appeals.

## II

■ The FMLA provides that eligible employees are entitled to take leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The statute further defines the scope of protected leave as follows:

The term "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves—

(A) inpatient care in a hospital, hospice, or residential medical facility; or

(B) continuing treatment by a health care provider.

29 U.S.C. § 2611(11). By regulation, employers are prohibited from counting qualifying leave as part of a no-fault leave policy. *See* 29 C.F.R. § 825.220(c) (1993). Thus, if Bauer can demonstrate that at least two of the points assessed against him are invalid under the FMLA, his termination would have been improper and he could be entitled either to damages or to reinstatement to his former position, as appropriate. *See* 29 U.S.C. § 2617(a)(1). As will be explained below, however, Bauer cannot demonstrate that his challenged leave was caused by a "serious health condition." Therefore, his absences were not protected by the FMLA, and the termination of his employment was not a violation of that statute.

■ The Department of Labor's interim regulations, which govern this case,[1] provide three alternative definitions of the phrase "serious health condition":

(a) For purposes of FMLA, "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves:

(1) Any period of incapacity or treatment in connection with or consequent to inpatient care (i.e, an overnight stay) in a hospital, hospice, or residential medical care facility;

(2) Any period of incapacity requiring absence from work, school, or other regular daily activities, of more than three calendar days, that also involves continuing treatment by (or under the supervision of) a health care provider; or

(3) Continuing treatment by (or under the supervision of) a health care provider for a chronic or long-term health condition

---

1. The parties have referred us to the Department of Labor's final regulations. *See* 29 C.F.R. pt. 825 (1995). However, the final regulations did not become effective until April 6, 1995, after Bauer's absences and after he was terminated from his employment with Varity. *See The Family and Medical Leave Act of 1993: Final rule,* 60 Fed.Reg. 2180, 2180 (1995), *as amended,* 60 Fed. Reg. 6658, 6658 (1995). Regulations, like statutes, are ordinarily presumed not to have retroactive effect, *see Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471–72, 102 L.Ed.2d 493 (1988), and this presumption is applicable to interpretive rules as well as legisla- tive rules, *see Health Ins. Ass'n of Am., Inc. v. Shalala,* 23 F.3d 412, 423 (D.C.Cir.1994). Because the FMLA's grant of authority to the Secretary of Labor to promulgate regulations, 29 U.S.C. § 2654, does not affirmatively grant her the authority to make those regulations retroactive, and because the final regulations themselves do not provide any indication that they are to be applied retroactively, we believe that the final regulations do not govern this case. *See Robbins v. Bureau of Nat'l Affairs, Inc.,* 896 F.Supp. 18, 21–22 (D.D.C.1995). Instead, we will refer to the interim regulations that were in force at the time of Bauer's termination. *See The Family and Medical Leave Act of 1993: Interim final rule;*

that is incurable or so serious that, if not treated, would likely result in a period of incapacity of more than three calendar days; or for prenatal care.

29 C.F.R. § 825.114 (1993). Bauer's condition does not meet the definition of a "serious health condition" under subsection (a)(1), since he never sought or received inpatient care.

Bauer also did not have a "serious health condition" as defined under subsection (a)(2), as his condition did not cause him to be absent from his position for more than three calendar days.[2] At most, Bauer was absent one full day and one half-day due to illness, another half-day for a physical examination, and he wished to leave work early on another day for the sigmoidoscopy. Furthermore, the record refutes the notion that his condition "requir[ed]" his absence from his work; he admitted in his deposition that the bleeding alone would not have caused him to stay at home on June 18, and that he was able to perform his duties on June 21 despite his decision to go home early.[3]

Finally, Bauer did not suffer from a "serious health condition" under subsection (a)(3). Bauer argues that, at the time of his termination, the severity of his condition was unknown and that it is possible that he suffered from rectal cancer or another condition so severe that it would be likely to require absences in the future. However, this notion is refuted by the fact that Bauer has not missed any work due to illness with his new employer, and that he has not sought medical treatment since his discharge from Varity.

■ Bauer argues that such after-acquired evidence should not be considered by the court; we disagree. In *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the Supreme Court held that, in cases arising under the ADEA and similar statutes, courts should not consider evidence acquired by the employer after the decision to discharge an employee. Since the primary issue for purposes of liability in such cases is the employer's motive for the discharge, and the employer could not be motivated by information not in its possession at the time of its decision, the Court reasoned that after-acquired evidence could not be relevant for the purposes of establishing liability. *Id.* at 358–60, 115 S.Ct. at 885. However, in this case, Varity's motive is not at issue; it concedes that it terminated Bauer's employment because of excessive absenteeism, and the question is whether the objective evidence establishes that Bauer had a "serious health condition," thus qualifying for protection under the FMLA. Since the plaintiff has the burden to establish the objective existence of a serious health condition, and subsequent developments are relevant to such an objective inquiry, we may consider Bauer's course of action after his employment was terminated. Bauer's subsequent attendance record and his failure to seek medical treatment conclusively refute the proposition that he suffered from a "serious health condition" as defined under subsection (a)(3).[4]

Thus, Bauer can satisfy none of the alternative definitions of a "serious health condition" under the interim regulations, and his

---

*request for comments*, 58 Fed.Reg. 31,794, 31,794 (1993) (codified at 29 C.F.R. pt. 825 (1993)).

2. We note that the final regulations expressly require that the plaintiff be absent from his position for more than three *consecutive* calendar days. *See* 29 C.F.R. § 825.114(a)(2)(i) (1995). We express no opinion as to whether the interim regulations should also be read to require the three days of absence to be consecutive.

3. The interim regulations also define the phrase "continuing treatment" for the purposes of subsections (a)(2) and (a)(3). *See* 29 C.F.R. § 825.114(b). We assume, without deciding, that Bauer could demonstrate that he was undergoing continuing treatment if he could also demonstrate that he met the other requirements of subsections (a)(2) and (a)(3).

4. Bauer argues that his July 11 absence for the examination by Dr. Eckert is protected under 29 C.F.R. § 825.114(b) (1995), which defines "treatment" to include "examinations to determine if a serious health condition exists and evaluations of the condition," but not to include "routine physical examinations." This definition is not replicated in the interim regulations. *Compare id. with* 29 C.F.R. § 825.114 (1993). We need not determine whether "treatment" under the interim regulations should also be so defined, or whether the July 11 examination was not "routine," since even if Bauer were successful on this argument he would demonstrate only that one point was wrongly assessed, and his termination for the accumulation of six absenteeism points would still be valid.

third, fourth, and fifth absences were not protected under the FMLA.[5] Bauer argues in this court that the termination of his employment was nonetheless still invalid under the FMLA, because the sixth and seventh points against him were unwarranted, and assessed by Varity only in an effort to prevent him from developing a claim that would be cognizable under that statute. We need not determine the contours of a claim of pretextual discharge under the FMLA, as Bauer has waived this argument by failing to raise it in the court below. *See Foster v. Barilow,* 6 F.3d 405, 407 (6th Cir.1993). In any event, Bauer's assertion that Varity purposely avoided informing him that he was scheduled to work on July 24 is without support in the record. At his termination hearing, Bauer defended the absence on the ground that his car battery was dead, not on the ground that he was not aware that he was scheduled to work. This fact would seem to belie his newly-raised assertion of pretext. Therefore, Bauer cannot demonstrate that any of the points assessed against him under the no-fault leave policy were invalid, and summary judgment was proper on his FMLA claim.

### III

The judgment of the district court is AFFIRMED.

---

**5.** Bauer also argues that Varity violated the FMLA by refusing to authorize leave so that he could undergo the sigmoidoscopy. If Bauer suffered from a "serious health condition" under the FMLA, it would have been improper for Varity to attempt to discourage him from taking protected leave. *See* 29 C.F.R. § 825.220(b) (1993). However, as noted above, Bauer did not suffer from such a condition, and thus his attempt to take leave was not protected. We also

note that the statute and the regulations place an obligation on an employee to provide his employer with thirty days' notice before taking leave, if such leave is reasonably foreseeable, and to consult with the employer in scheduling the leave so as to minimize any disruption to the employer's operations. *See* 29 U.S.C. § 2612(e); 29 C.F.R. § 825.302(a), (e) (1993); *see also* 29 C.F.R. § 825.302(a), (e) (1995).