James **GARST, Charles Meridieth, Donna Lane, and Donna Russell Amos, Plaintiffs–Appellants,**

v.

**WAL–MART STORES, INC., Sam's East, Inc., and Associates Health and Welfare Plan, Defendants–Appellees,**

and

**Hartford Life and Accident Insurance Company, Defendant.**

No. 00–5951.

United States Court of Appeals, Sixth Circuit.

March 12, 2002.

Before NORRIS and CLAY, Circuit Judges; SARGUS, District Judge.*

CLAY, Circuit Judge.

Plaintiffs James Garst, Charles Meridieth, Donna Lane, and Donna Russell Amos appeal from the district court's order granting summary judgment in favor of Defendants Wal–Mart Stores, Inc. ("Wal–Mart"), Sam's East, Inc. ("Sam's Club"), a wholly owned subsidiary of Wal–Mart, Associates' Health and Welfare Plan and Hartford Life and Accident Insurance Company ("Hartford") in an action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Plaintiffs filed suit seeking long-term disability ("LTD") benefits without any offset for Social Security benefits under the Associates' Health and Welfare Plan ("the Plan"), a self-funded employee welfare benefit plan sponsored by Wal–Mart and administered by Hartford. For the reasons set forth below, we AFFIRM the district court's judgment.

## BACKGROUND

Plaintiffs, former employees of Wal–Mart and Sam's Club and participants in the Plan, began working for Wal–Mart or Sam's Club from the mid–1980s to 1990, purchasing LTD insurance offered by Wal–Mart through Hartford. Subsequently, Plaintiffs became disabled and submitted claims for LTD insurance in 1994 and thereafter. Before Plaintiffs were paid the LTD benefits, they each signed reimbursement agreements obligating them to repay Hartford, the insurance carrier of the Wal–Mart plan, for "all other income benefits," including Social Security Disability Insurance ("SSDI") benefits and retirement benefits. Plaintiffs, with the exception of Lane, eventually qualified for SSDI benefits. Hartford withheld their LTD benefits when Plaintiffs, except for Lane, failed to repay the Plan for their SSDI benefits. Consequently, Plaintiffs, individually and as named members of a proposed class, brought this ERISA action

In their original complaint, Plaintiffs primarily alleged that they were wrongfully denied LTD benefits without an offset for Social Security benefits, that they were not informed of their rights and obligations under the Plan, and that they did not

* The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

receive notification of material modifications to the Plan or the summary plan description ("SPD") documents. After Defendants filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on January 6, 2000, Plaintiffs moved to amend their original complaint to allege the ERISA violations with specificity. The district court granted Plaintiffs' motion to amend on June 9, 2000, addressing Defendants' respective motions for summary judgment in the context of Plaintiffs' amended complaint. In an order issued on June 9, 2000, the district court granted Defendants' respective motions for summary judgment based on the reasons set forth in its memorandum opinion. Plaintiffs filed a timely appeal on July 10, 2000, challenging the grant of summary judgment in favor of Defendants Wal–Mart, Sam's Club and Associates Health and Welfare Plan. On November 17, 2000, this Court granted Plaintiffs' motion to dismiss the appeal against Hartford, the plan administrator.

## DISCUSSION

### Standard of Review

This Court reviews *de novo* a district court's grant of summary judgment in an ERISA action. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir.1989).

In evaluating an administrator's or fiduciary's interpretation of an ERISA-governed plan, the district court applies a *de novo* standard unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan gives such discretionary authority, this Court reviews the administrator's decision to deny benefits using "the highly deferential arbitrary and capricious standard of review." *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir.1998) (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. at 115, 109 S.Ct. 948).

In the case at bar, the Plan designated Hartford as its claims administrator, giving Hartford discretionary authority to resolve all questions concerning the administration, interpretation or application of the Plan. Thus, this Court reviews the district court's grant of summary judgment to " 'determine if there is any genuine issue of material fact whether the insurance company's decision to deny benefits was arbitrary or capricious.' " *Killian*, 152 F.3d at 520 (quoting from *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991)). Under this deferential "arbitrary or capricious" standard, this Court will uphold a benefit determination if it is "rational in light of the plan's provisions." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir.1996) (internal quotations and citation omitted). Therefore, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (citation omitted).

### Analysis

On appeal, Plaintiffs assert that the Plan as written is in direct violation of 29 U.S.C. § 1022(a) and § 1024(b) because the SPD did not expressly inform them that they were required to apply for SSDI benefits

and that they would be required to reimburse Hartford for any retroactive payment of SSDI benefits that they received, and because they did not understand that the Plan included a provision for the SSDI offset. Plaintiffs also claim that they did not receive copies of subsequent modifications of the SPD containing the provisions at issue. (Plaintiffs' Br. at 22–23). In this case, the district court did not err in granting summary judgment to Defendants because the Plan Administrator's decisions requiring Plaintiffs to apply for SSDI benefits and reducing LTD benefits by any SSDI benefits that they received were based upon a reasonable interpretation of the Plan.

The Monthly Benefit provision in the SPD is not ambiguous.

■ 29 U.S.C. § 1022(a) provides in pertinent part that a SPD be "written in a manner calculated to be understood by the average plan participant and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." In this case, the pertinent provision in the January 1990 version of the SPD provides:

> YOUR MONTHLY BENEFIT—
> HOW IT IS CALCULATED?
>
> Your monthly benefit is 60% of your average monthly wage less:
>
> · all other compensation such as; pension plans, Workers' Compensation, social security retirement plans, etc.

However, the provision was subsequently modified, appearing in the 1994 and 1996 versions of the SPD as follows:

YOUR MONTHLY BENEFIT—
HOW IT IS CALCULATED?

Your monthly benefit is 60% of your average monthly wage less:

· All other income benefits such as Workers' Compensation and Social Security Benefits to which you and your dependents may be entitled because of your disability or retirement and lost wages from a "no fault" automobile insurance plan

Federal common law principles of contract interpretation are used in construing language of a plan governed by ERISA. *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 556 (6th Cir.1998). Plan provisions are to be interpreted according to their plain meaning, in an ordinary and popular sense. *Id.* "In applying this plain meaning analysis, we 'must give effect to the unambiguous terms of an ERISA plan.'" *Id.* (quoting from *Lake v. Metropolitan Life Ins. Co.,* 73 F.3d 1372, 1379 (6th Cir.1996)).

As Defendants point out, the Plan is subject to amendment by the Administrative Committee at any time without the consent of the participants. *See Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995) ("Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans."); *Sengpiel v. B.F. Goodrich Co.,* 156 F.3d 660, 666 (6th Cir.1998) (holding that welfare plans may reduce, amend or terminate benefits at any time).[1] Since all Plaintiffs sought

---

**1.** ERISA defines "welfare benefit plan" as follows:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose

of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability....

29 U.S.C. § 1002(1)(1988).

LTD benefits after the 1994 version of the SPD was in effect, it follows that our inquiry is directed to the 1994 and 1996 versions of the provision in question. Here, the Plan terms in question for the years 1994 through 1997 are identical. Reading the contractual language of the provision in question in an ordinary and popular sense, the only reasonable interpretation of this language is that a participant's disability benefit is reduced by the amount of any Social Security benefit received by the participant.[2]

In addition, there is nothing in the record to support Plaintiffs' assertion that they did not receive the SPD booklets modifying the terms of the coverage for each year in which they were enrolled in the Plan. Defendants claim that Plaintiffs received the SPD booklets, specifically the enrollment form for 1994, which contained the following language: "I understand the Personal Choice program as described in the enrollment materials." (Defendants' Br. at 26–27). The 1996 and 1997 enrollment forms contained similar language: "I have received a copy of the Wal–Mart Benefits Book and I understand my benefits programs as described in the book and enrollment materials."

■ Even assuming *arguendo* that Plaintiffs did not receive the SPD booklets, they still cannot show that they are entitled to a substantive remedy under § 1024. Under § 1024(b)(4) the following is provided:

> [T]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the

latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated.

29 U.S.C. 1024(4)(b). A violation of this section subjects a plan administrator to a potential penalty under § 502(c) of ERISA, which grants a reviewing court the discretion to impose a penalty of up to $100 a day on a plan administrator—payable to the participant or beneficiary who submitted a written request to the administrator—when it finds that the administrator "fail[ed] or refuse[d] to comply with a request for any information which such administrator [was] required by this subchapter to furnish ... unless such failure or refusal result[ed] from matters reasonably beyond the control of the administrator...." 29 U.S.C. § 1132(c). The purpose of ERISA's penalty provision is "not so much to penalize as to induce plan administrators to respond in a timely manner to a participant's request for information." *Winchester v. Pension Comm. of Michael Reese Health Plan, Inc.*, 942 F.2d 1190, 1193 (7th Cir.1991). Thus, any presumed violation of § 1024 does not give rise to a substantive remedy in this case.

The Social Security Benefit provision in the SPD is not ambiguous.

■ Plaintiffs also assert that the SPD was not "written in a manner calculated to be understood by the average plan participant" under 29 U.S.C. § 1022 because "[they], as average plan participants, did not understand that they were required to apply for SSDI benefits before they could apply for LTD benefits, nor did they un-

---

**2.** In the district court, Plaintiffs contended that the language of the earlier 1990 version was ambiguous and not "calculated to be understood by the average plan participant." Even if the language of the 1990 provision is deemed to be ambiguous on the ground that it may be reasonably interpreted to mean that

monthly LTD benefits, while offset by Social Security retirement benefits, are not offset by SSDI benefits, it is clear that the change in the policy language beginning in 1994 to include "Social Security Benefits" does not present any such ambiguity.

derstand it to require them to reimburse the defendant for any retroactive payment received as a result of applying for SSDI benefits." (Plaintiffs' Br. at 23). There is no merit to these assertions.

As Defendants point out, the SPD contains the following provision:

SOCIAL SECURITY BENEFIT ---
WHY SHOULD I FILE?

If your disability is expected to last or has lasted five consecutive months, you are required to apply for Social Security disability benefits. If you are denied such benefits, you will be required to follow the appeal process through to a hearing before an administrative law judge if necessary.

Reading the contractual language of this provision in an ordinary and popular sense, the only reasonable interpretation of this language is that a participant was required to apply for SSDI benefits. Contrary to Plaintiffs' assertion, the language contained in the SPD does expressly state that they were required to apply for SSDI benefits before they could receive LTD benefits. In addition, each Plaintiff signed and submitted an LTD Payment Options and Reimbursement Agreement containing the following language:

The benefit plan under which you are covered provides that Long Term Disability (LTD) benefits will be reduced by the amount of Other Income Benefits which you are eligible to receive. Please refer to your Plan Booklet for a full description of Other Income Benefits.

The form explicitly defined "Other Income Benefits" as "Social Security Disability/Retirement."

Moreover, as the district court noted, Plaintiffs were approved for LTD benefits under the Plan, and all elected to receive the full amount provided by the policy, while acknowledging in writing the following provision:

B. Please pay me my monthly Long Term Disability benefit with no reduction for estimated Other Income Benefits. I understand that this may result in an overpayment of my LTD benefits which I will be required to refund to the Benefit Plan in a lump sum.

In short, the contractual language of the Social Security provision in the SPD was not ambiguous, allowing for only one reasonable interpretation requiring a participant to apply for SSDI benefits and reducing LTD benefits by any Social Security benefits that the participant received.

■ Although Plaintiffs argue that they did not understand that the provision required an offset of their SSDI benefits, Defendants correctly point out that ERISA does not impose a duty upon the plan fiduciary to explain the meaning and significance of the SSDI offset, "[a]bsent a specific employee-initiated inquiry." *Electro–Mechanical Corp. v. Ogan,* 9 F.3d 445, 451–52 (6th Cir.1993). Further, while Plaintiffs allege that they did not understand that they were required to apply for SSDI benefits, it so happens that each Plaintiff applied for such benefits. Notwithstanding, there is no indication that Plaintiffs questioned the Plan Administrator about the application of the provision offsetting SSDI benefits. Accordingly, Defendants did not have the duty to explain the terms of the Plan to Plaintiffs. *Id.*

The SPD was not misleading regarding the recoupment of retroactive SSDI payments.

■ Nevertheless, Plaintiffs claim that the district court erred in finding that the SSDI offset was valid because "the disability offset is in violation of ERISA as it applies to them because the summary plan description on which they relied when purchasing the LTD was misleading because

it omitted the SSDI offset, reimbursement requirements and prerequisite applications for SSDI." (Plaintiffs' Br. at 17.) Contrary to Plaintiffs' assertion, there was no ambiguity created in the SPD just because the SPD did not state that "they would be required to reimburse the defendants for any lump sum retroactive SSDI payment received by the plaintiffs...." (Plaintiffs' Br. at 21.) Even though the SPD did not expressly state that there was a right under the Plan to recoup overpayments, it is clear that retroactive recoupment was contemplated by the Plan. *See Lake v. Metropolitan Life Ins. Co.*, 73 F.3d 1372, 1377–78 (6th Cir.1996) (finding that even though the Plan's language did not specifically distinguish between retroactive and prospective SSDI payments, language providing that payments would be "reduced by ... any primary Social Security benefits" entitled the Plan to reduce LTD benefits by any SSDI payments and to recoup retroactive SSDI awards).

Further, contrary to Plaintiffs' claim, the fact that they did not receive a copy of the underlying Plan does not distinguish this case from *Lake* where the plaintiffs received a copy of the underlying plan and the SPD as a single package. In support, Plaintiffs rely upon *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134 (6th Cir.1988), where this Court enforced the terms of the SPD whose terms directly contradicted those found in the underlying plan and where the plaintiff had received only the SPD. Such reliance on *Edwards* is completely misplaced. As Defendants correctly point out, there is nothing to indicate that there is a conflict between the terms of the SPD and those of the underlying Plan in this case.

There is also no support for Plaintiffs' reliance upon *Bush v. Metropolitan Life Ins. Co.*, 656 F.2d 231, 233 (6th Cir.1981) for the proposition that reimbursement will not be enforced when the SPD does not mention the reimbursement of Social Security benefits and such reimbursement results in a hardship to the participant. In *Bush*, this Court held that the terms of the plan providing for insurance coverage did not permit the defendant to recoup a retroactive lump-sum SSDI award. As discussed in *Lake*:

The linchpin of the court's decision [in *Bush* ] was the existence of ambiguity in the recoupment provision. The court noted that the phrase "should have not been paid or should have been paid in a lesser amount" was subject to two equally plausible interpretations: (a) an overpayment is determined by all facts whenever occurring, or (b) an overpayment is determined solely by facts in existence at the time of the payment. The *Bush* court then applied the Michigan state law doctrine of contra proferentum against the defendant to prohibit recoupment in cases involving a retroactive award of SSDI benefits.

*Lake*, 73 F.3d at 1378. Thus, *Lake* is controlling on the issue concerning the SPD provision regarding the recoupment of retroactive SSDI payments.

Plaintiff Lane failed to exhaust her administrative remedies.

■ The district court also did not err in granting summary judgment with regard to Plaintiff Lane for failure to exhaust her administrative remedies. "[T]he decision whether to apply the exhaustion requirement is committed to the district court's sound discretion and can be overturned on appeal only if the district court has clearly abused its discretion." *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453–54 (6th Cir.1991). Traditional exhaustion principles include an exception for instances "when resort to the administrative route is futile or the remedy inadequate." *Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir.1994). Exhaustion of administrative

remedies is a prerequisite to commencing suit under ERISA to recover benefits alleged to be due under an employee welfare benefit plan. *Baxter,* 941 F.2d at 453 (requiring the exhaustion of administrative remedies of denial of medical benefits before filing a federal suit). "The fact that permissive language was used in framing the administrative review provision makes no difference." *Id.* at 454 (citation omitted).

In this case, Lane's benefits were terminated on November 1, 1997 because she was no longer disabled under the terms of the Plan after her physician released her to perform unrestricted work. Slightly more than one year after her benefits were terminated, Lane, through her counsel, wrote a letter dated November 5, 1998 concerning the denial of her LTD benefits. On December 16, 1998, Hartford informed Lane's counsel that it needed a signed authorization from Lane authorizing release of her file. Although Lane wrote to Hartford on February 4, 1999, requesting an explanation of the dismissal of her LTD benefits and to have the information sent to her attorney, she did not pursue the matter after Hartford transmitted the requested information to Lane's attorney, stating that her benefits were terminated because she "no longer meets definition of disability." Lane alleged that pursuing her administrative claim was futile since "a successful claim would result in benefits of only a few dollars a month" in light of the provision offsetting SSDI benefits.

■ Here, Lane failed to exhaust her administrative remedies once she was informed that her LTD benefits were terminated because she was no longer disabled under the Plan. Further, as Defendants point out, under the terms of the Plan, Lane had 60 days within which to appeal the decision denying benefits. Thus, even if Lane had pursued the matter administratively, her claim was not subject to judicial review because she failed to comply with a reasonable time constraint imposed by the plan for administrative review of denial of her claim. *See Moffitt v. Whittle Communications, L.P.,* 895 F.Supp. 961, 969 (E.D.Tenn.1995) (finding that insurer did not waive plan provision requiring request for administrative review within 60 days and was not estopped from relying on provision). Accordingly, the district court's grant of summary judgment in favor of Defendants with respect to Lane was proper.

The district court properly refused to consider evidence outside the administrative record.

■ Finally, the district court properly did not consider affidavits that Plaintiffs filed in response to Defendants' motions for summary judgment because they were not available to the Plan Administrator. It is well-settled that this Court's review is confined to the record that was before the plan administrator. *See Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 614–15 (6th Cir.1998); *see also University Hospitals of Cleveland v. Emerson Electric Co.,* 202 F.3d 839, 845 (6th Cir.2000) ("[I]n our review of the District Court's ruling, we will consider only the materials available to the EBC, and not any depositions, affidavits, or similar litigation-related materials that the parties submitted to the District Court.") In this case, Plaintiffs submitted the affidavit of Eric Holmes, a law professor, and those of Plaintiffs Garst and Meridieth, in support of their claim that, as average plan participants, they could not understand that the SPD required them to apply for SSDI benefits before they could receive LTD benefits, or that they were required to pay reimbursement for retroactive SSDI benefits. (Plaintiffs' Br. at 15–16). Because the affidavits were not available to the Plan Administrator when it made the decision to enforce the Social Security offset, they were properly excluded from consid-

eration. *Wilkins,* 150 F.3d at 614–15. In any event, as we have already concluded, Hartford's interpretation of the Plan's provisions was reasonable.

## CONCLUSION

The district court did not err in granting summary judgment to Defendants because the Plan Administrator's decisions requiring Plaintiffs to apply for SSDI benefits and reducing LTD benefits by any SSDI benefits that they received were based upon a reasonable interpretation of the Plan. First, reading the contractual language of the Monthly Benefit provision in the SPD in an ordinary and popular sense, the only reasonable interpretation of this language is that a participant's disability benefit is reduced by the amount of any Social Security benefit received by the participant. Second, the contractual language of the Social Security provision in the SPD was not ambiguous, allowing for only one reasonable interpretation requiring a participant to apply for SSDI benefits and reducing LTD benefits by any Social Security benefits that the participant received. Third, the SPD was not misleading regarding the recoupment of retroactive SSDI payments. Further, the district court properly granted summary judgment to Defendants and dismissed Lane's claim for failure to exhaust her administrative remedies. Finally, the district court did not err in refusing to consider affidavits that Plaintiffs filed in response to Defendants' motion for summary judgment because they were not available to the Plan Administrator. Accordingly, we AFFIRM the district court's judgment.