NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0294n.06
Filed: April 20, 2009

No. 08-5204

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KIMBERLY CULPEPPER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| BLUECROSS BLUESHIELD OF TENNESSEE, | ) | |
| INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: McKEAGUE and GRIFFIN, Circuit Judges; and WEBER, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiff Kimberly Culpepper appeals the district court's order granting summary judgment in favor of her former employer, defendant BlueCross BlueShield of Tennessee, Inc. ("BlueCross"), and denying her motion for summary judgment in this action alleging unlawful termination of her employment in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* We affirm.

I.

[*]The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

Culpepper began full-time employment with BlueCross, a large medical insurance company, in 1998. She worked in the mail room in various capacities until her termination on March 8, 2006. During the course of her employment, Culpepper was aware of and subject to BlueCross's Incident Reporting Policy ("IRP"), applicable to all employees. Under the IRP, any employee who incurs more than five unapproved incidents or absences within a twelve-month period may be subject to termination.[1]

In December 2005, Culpepper and her husband sought out a reproductive specialist, Dr. Barry Donesky, to discuss the possibility of undergoing in vitro fertilization so that they could have another child. The couple decided to proceed with the multi-step procedure and, in January 2006, Culpepper met with Dr. Donesky for preliminary screenings. On February 8, 2006, Culpepper requested FMLA leave from BlueCross for her scheduled treatment dates and on that same day, she received an ultrasound as the first step in the in vitro fertilization process.

In response to Culpepper's FMLA leave request, BlueCross's third-party administrator, UnumProvident Corporation, provided her with paperwork explaining the requirements for leave under the FMLA and included a Certification of Healthcare Provider form (the "Certification") to be completed by her treating physician.[2] Dr. Donesky completed the Certification and submitted it

---

[1]The IRP provides that "[a]n unscheduled/unapproved absence will *not* be considered an Incident if it is covered under . . . Family Medical Leave (FMLA) . . . ."

[2]Under the FMLA, "[a]n employer may require that an employee's leave . . . due to the employee's own serious health condition . . . be supported by a certification issued by the health care provider of the employee . . . ." 29 C.F.R. § 825.305(a).

to UnumProvident. He categorized the in vitro fertilization as a "serious health condition" because Culpepper "will be taking medication that requires close monitoring by ultrasound and lab work" and "[s]he will also be undergoing two (2) outpatient surgical procedures." Dr. Donesky stated in the Certification that Culpepper required two separate three-day periods of intermittent leave, for a total of six days of leave, during the designated treatment period from February 8 to March 10, 2006. These "episodes of incapacity" or "treatment" coincided with the egg retrieval and transplantation process achieved through outpatient surgical procedures. Dr. Donesky recommended a reduced work schedule of two to three days per workweek to correspond with the two leave periods.[3] He further noted that the in vitro fertilization process would require "approximately 15 visits" and "weekly lab tests and office visits."

Culpepper proceeded with the in vitro fertilization process even though her FMLA leave had not yet been approved by UnumProvident. She did not report to work at all for eleven days, from February 19 through March 6, 2006. She claimed that she was physically unable to work during this time frame because she "was sore from the surgery" and was on medication that adversely affected her.

In a letter dated March 2, 2006, UnumProvident denied Culpepper's requested FMLA leave on the ground that the Certification she provided "is insufficient to establish your need for leave since the health care provider did not certify that a serious health condition existed under the

---

[3]Dr. Donesky left blank that section of the Certification form regarding "[d]ates the employee will need to be absent from work on a full/continuous schedule."

FMLA." Culpepper advised Dr. Donesky of the decision and, on March 7, 2006, Dr. Donesky sent

a letter to BlueCross, stating:

> Kim Culpepper is under my care. Her recent treatment has involved the administration of injectable medications which require intense monitoring over an approximately 2 week period. In addition, she underwent two outpatient procedures which required recovery and a three-day period of limited activity. I understand that her request for FLMA [sic] has not been approved, and I would ask that you take her circumstances into consideration.

Culpepper returned to work on March 7, 2006.[4] She was terminated the next day by

BlueCross for excessive unexcused absences pursuant to the IRP. A memorandum from Culpepper's

supervisor to BlueCross's management explained:

> [Culpepper] received her first incident in the past twelve-month period on 7/26/05 and her second incident on 8/24/05. Attached are copies of the incident reports that she signed on both of these occasions.
>
> Since that time [Culpepper] requested FMLA approval from Unum Provident for herself from 2/20/06 thru 3/6/06. [Culpepper] did not report to work during this time. Our benefits area received notification from Unum Provident that [Culpepper's] request for FMLA had been denied. [Culpepper] did not have any PTO time to cover those days, which resulted in an additional 11 incidents.
>
> [Culpepper] submitted information from her physician. In collaboration with the benefits area, six days may be deemed as excusable absence. However, 5 incidents for this time period would remain leaving her with a total of 7 incidents.
>
> In accordance with our company policy, the accumulation of six incidents within a twelve-month period is cause for termination. [Culpepper] has definitely been made

---

[4]Culpepper's medical records indicate that the in vitro fertilization cycle did not result in a successful pregnancy.

aware of this policy. Therefore, I am recommending termination of [Culpepper's] employment effective today, March 8, 2006.[5]

Culpepper thereafter filed the present lawsuit, averring that BlueCross violated the FMLA when it terminated her for excessive unexcused absences under its leave policy. Upon the completion of discovery, the parties filed cross-motions for summary judgment. BlueCross asserted that (1) Culpepper was not entitled to FMLA leave because she failed to provide the requisite thirty-day notice of her need for foreseeable leave under 29 C.F.R. § 825.302; (2) she did not suffer from a "serious health condition" as defined by the FMLA; and (3) she was legally terminated because she received all of the leave that she requested, but still exceeded the number of unexcused absences permitted under the IRP. Culpepper, on the other hand, maintained that BlueCross violated the FMLA by denying her requests for leave for in vitro fertilization procedures which, according to Culpepper, constituted a "serious health condition" under the FMLA.

On January 11, 2008, the district court issued an opinion and order in which it granted BlueCross's motion for summary judgment, denied Culpepper's motion, and dismissed the case in its entirety. The district court held in pertinent part:

> Plaintiff has thirteen total incidents of unexcused absences from work. Plaintiff concedes two of those incidents, occurring prior to her fertility treatments, are not in dispute here. Defendant excused six of those incidents for Plaintiff's fertility treatments. The issue is whether the remaining five incidents, resulting in Plaintiff's termination, are protected under the FMLA.

---

[5]Culpepper does not dispute that as of February 8, 2006, she already had accumulated two unexcused absences unrelated to the present case in the relevant twelve-month period under BlueCross's IRP.

* * *

Plaintiff alleges she was incapable of working from February 19 to March 6, 2006, and thus her termination violated the FMLA. However, Plaintiff has failed to provide any evidence beyond her own testimony she was unable to work during that entire period. According to the documents and medical testimony before this Court, Plaintiff needed only two, three-day periods of leave. Defendant granted that leave, but terminated Plaintiff for her additional, unexcused absences. Because Plaintiff failed to provide sufficient evidence of her inability to work for the entire period of her absence, the FMLA does not apply. Plaintiff's termination is therefore not in violation of the FMLA . . . .

Culpepper now timely appeals the judgment dismissing her cause of action.

II.

We review de novo the district court's order granting or denying summary judgment. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty*, 544 F.3d at 702 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Where cross-motions for summary judgment have been filed by the parties, we must evaluate each motion on its own merits, viewing all facts and inferences in the light more favorable to the non-moving party. *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004).

III.

The FMLA entitles a qualifying employee to take up to twelve weeks of leave each year if, *inter alia*, the employee has a serious health condition that renders the employee unable to perform the functions of his position. 29 U.S.C. § 2612(a)(1)(D); *Daugherty*, 544 F.3d at 706. A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).[6] The employee must establish "the objective existence of a serious health condition." *Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109, 1112 (6th Cir. 1997). An employee who takes leave for a serious medical condition is entitled, upon return from such leave, to be restored to the same position the employee held when the leave commenced. 29 U.S.C. § 2614(a)(1)(A). However, "[t]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Cavin v. Honda of Am. Mfg., Inc.,* 346 F.3d 713, 723 (6th Cir. 2003) (quoting *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998)); *see also* 29 C.F.R. § 825.302(a) ("An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable based on . . . planned medical treatment for a serious health condition . . . .").

The FMLA affords protection to employees in the event they suffer interference with the exercise of any right under the FMLA, or retaliation or discrimination for exercising their FMLA rights. 29 U.S.C. § 2615(a)(1) and (2); *Daugherty*, 544 F.3d at 707. "The Act's prohibition against

---

[6]*See also* 29 C.F.R. § 825.114(a)(2) (1995) (further defining a serious health condition involving continuing treatment).

'interference' prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c). Thus, "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies." *Id*.; *see also Novak v. Metrohealth Med. Ctr*., 503 F.3d 572, 577 (6th Cir. 2007) (citing 29 C.F.R. § 825.220(c) and noting that "the FMLA prohibits an employer from counting FMLA leave against an employee under its 'no fault' attendance policy."); *Bauer*, 118 F.3d at 1111 ("By regulation [29 C.F.R. § 825.220(c)], employers are prohibited from counting qualifying leave as part of a no-fault leave policy.").

Consequently, although "[t]he FMLA is not implicated and does not protect an employee against disciplinary action based upon [] absences if those absences are not taken for one of the reasons enumerated in the Act, . . . the FMLA *is* implicated and does protect an employee against disciplinary action based on her absences if those absences are taken for one of the Act's enumerated reasons." *Bachelder v. Am. West Airlines, Inc*., 259 F.3d 1112, 1125 (9th Cir. 2001) (citations and internal quotation marks omitted).

An employee such as Culpepper, who believes that she was entitled to FMLA leave with respect to her unexcused absences, may assert a cause of action for FMLA interference. *Novak*, 503 F.3d at 577. "To prevail on an FMLA interference claim, a plaintiff must establish that (1) she was an eligible employee as defined under the FMLA; (2) her employer was a covered employer as defined under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave the employer

notice of her intention to take FMLA leave; and (5) her employer denied FMLA benefits to which she was entitled." *Id*. at 577-78.

In the present case, the central issue is whether Culpepper's five unexcused absences that triggered her termination under BlueCross's IRP are protected by the FMLA. The parties dispute whether Culpepper's in vitro fertilization procedure constitutes a "serious health condition" under 29 C.F.R. § 825.114(a)(2) (1995) (current version at 29 C.F.R. § 825.115) and whether she submitted the requisite notice for foreseeable medical treatment pursuant to 29 C.F.R. § 825.302(a). However, even assuming arguendo that both of these hurdles have been cleared by Culpepper, her FMLA claim still must fail. Culpepper received exactly what her doctor ordered – six days of FMLA leave. No additional leave was authorized by the Certification, and Culpepper has not shown that the five absences at issue were taken for one of the reasons enumerated in the FMLA.

Although Culpepper argues that the Certification excused her from work from February 8 through March 10, 2006, that is not what the Certification actually states. Dr. Donesky certified that plaintiff "may/will need to be absent from work" for two "episodes of incapacity," each lasting three days. In a second relevant portion of the Certification, Dr. Donesky recommended a "reduced [work] schedule" for plaintiff of two to three days per workweek. Significantly, as the district court accurately noted, Dr. Donesky explained during his deposition that these two sections *both referred to the same absences* – in other words, plaintiff only required two absences of three days each, *not* a reduced work schedule of two to three days *in addition* to the two to three days of total incapacity.

Consistent with the Certification, the March 7, 2006, letter sent by Dr. Donesky to BlueCross noted that Culpepper "underwent two outpatient procedures which require recovery and a three-day period of limited activity." Dr. Donesky did not mention any need for Culpepper's additional five days of absence.

Finally, as the district court found, there is nothing in Dr. Donesky's deposition testimony indicating that Culpepper would be incapable of working for more than three days after the egg retrieval and transplantation procedures. He testified that, although many patients voluntarily choose not to work for the duration of the treatment, this choice is a discretionary decision on the part of the individual patient. While some women might develop nausea, discomfort, or other complications requiring further time off, Dr. Donesky testified that Culpepper did not indicate to him that she experienced such adverse symptoms.

Culpepper calls our attention to a Notice of Patient Release/Return form sent by Dr. Donesky's office, indicating that she should be released from work from February 20, 2006, until March 7, 2006, as evidence supporting her claim that the disputed absences are covered by the FMLA. However, this notice is of questionable reliability because it is undated, lacks detailed medical information, and bears the signature of one of Dr. Donesky's staff members, not the doctor himself. Because of these deficiencies, it does not constitute an acceptable form of certification of a serious health condition under the FMLA. *See Novak*, 503 F.3d at 578 (finding the certification form submitted by the plaintiff to be unreliable where it failed to set forth detailed medical facts and was signed by an assistant, not the physician).

In sum, other than Culpepper's own subjective testimony that she was too sore from her surgery to work from February 19 through March 6, 2006, she has produced no evidence that the five unexcused absences that caused her dismissal were covered by the FMLA. The FMLA therefore does not protect her from the disciplinary action taken by BlueCross pursuant to its IRP. *See Bailey v. Amsted Indus. Inc.*, 172 F.3d 1041, 1045-46 (8th Cir. 1999) (entering judgment in favor of the defendant employer on the plaintiff's FMLA claim because the plaintiff had sufficient unexcused absences not attributable to his alleged serious health conditions to justify his dismissal); *Bauer*, 118 F.3d at 1112-13 (affirming summary judgment in favor of the defendant employer who terminated the plaintiff for excessive absenteeism under its no-fault leave policy where the plaintiff failed to establish a "serious health condition" for purposes of the FMLA and failed to show that any of the points assessed against him for his unexcused absences were invalid under the FMLA).

For these reasons, we conclude that the district court properly granted BlueCross's motion for summary judgment, denied Culpepper's motion, and dismissed the case.

IV.

The judgment of the district court is affirmed.