*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0109p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MARK FARHNER,

        *Plaintiff-Appellant,*

    *v.*

UNITED TRANSPORTATION UNION DISCIPLINE
INCOME PROTECTION PROGRAM,

        *Defendant-Appellee.*

No. 09-4431

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 08-02880—Christopher A. Boyko, District Judge.

Argued: December 9, 2010

Decided and Filed: May 3, 2011

Before: GILMAN and GRIFFIN, Circuit Judges; COLLIER, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Gregory G. Paul, EQUALITY AT WORK, PLLC, Sewickley, Pennsylvania, for Appellant. Kevin C. Brodar, UNITED TRANSPORTATION UNION, Cleveland, Ohio, for Appellee. **ON BRIEF:** Gregory G. Paul, EQUALITY AT WORK, PLLC, Sewickley, Pennsylvania, for Appellant. Kevin C. Brodar, UNITED TRANSPORTATION UNION, Cleveland, Ohio, for Appellee.

    COLLIER, Chief D. J., delivered the opinion of the court, in which GRIFFIN, J., joined. GILMAN, J. (pp. 13–14), delivered a separate opinion concurring in the judgment reached.

_____

[*] The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

————————————

**OPINION**

————————————

CURTIS L. COLLIER, Chief District Judge.  Plaintiff-Appellant Mark Farhner ("Farhner") appeals the district court's order granting Defendant-Appellee United Transportation Union Discipline Income Protection Program's (the "Plan" or "DIPP") motion for summary judgment.  Farhner brings this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, seeking judicial review of the Plan's denial of discharge benefits.  Farhner argues that the Plan Administrator's decision to deny his benefits was arbitrary and capricious as a matter of law.  Specifically, Farhner contends that he should not have been denied income replacement benefits by the Plan Administrator because his employer improperly terminated him for insubordination.  Rather, Farhner asserts that he was protected by the Family and Medical Leave Act ("FMLA").  Farhner requests us to reverse the district court's grant of summary judgment in favor of the Plan and award him benefits with applicable interest.

For the reasons set forth below, we AFFIRM the district court's decision.

**I.  Relevant Facts/Procedural History**

Farhner was employed by the Kansas City Southern Railway ("KCSR") as a trackman and conductor.  In May 2004, he advised his supervisor about "some personal things going on," and he sought a medical leave of absence.  The supervisor then advised Farhner that he would have to supply a note from his medical doctor in order for KCSR to evaluate whether Farhner's request for leave was one under the FMLA.  On May 11, 2004, Farhner submitted a letter from his treating physician stating that Farhner needed a leave of absence for at least three months "for medical reasons." Farhner's supervisor forwarded the letter to the Manager of Human Resources, who informed Farhner's supervisor that the letter did not provide sufficient information for KCSR to evaluate Farhner's request.

On May 12, 2004, Farhner's supervisor advised Farhner to contact the human resources manager to determine what information Farhner needed to provide. The supervisor also placed Farhner on vacation leave at that time. On May 13, 2004, Farhner contacted the human resources manager, who informed him that in order to evaluate his request, Farhner would need to provide a note from his treating physician describing (1) the date Farhner first saw his doctor; (2) a diagnosis; (3) the nature of any treatment; (4) a prognosis; and (5) a potential return date.

By May 25, 2004, Farhner had exhausted all of his vacation leave. Farhner's supervisor then contacted Farhner via telephone to inform him that if he could not provide the requested information, he would have to return to work within 48 hours. The supervisor followed up the conversation with a certified letter stating the same. Farhner replied on the same day by faxing a request for FMLA leave. He did not, however, provide the information that was requested by the human resources manager nor did he return to work.

On June 7, 2004, KCSR issued Farhner a Notice of Investigation to determine whether he was being insubordinate by failing to comply with the instructions given to him on May 25, 2004. A hearing was held on July 22, 2004, and Farhner was discharged from his employment with KCSR on July 30, 2004 for insubordination, in violation of the General Code of Operating Rules 1.6 and 1.13.

Subsequent to his discharge, Farhner filed an application for income-replacement benefits through the DIPP, which is structured in accordance with ERISA, 29 U.S.C. §§ 1001-1461. As a member of UTU, he was able to purchase coverage under the DIPP for any suspension or discharge, subject to certain restrictions. Some of those restrictions are found in Section 3.5(b) of the Plan, which explicitly states:

> 3.5(b) You will receive benefits under the Plan when you are suspended or discharged from your permanent, non-probationary employment for disciplinary reasons. You will also receive benefits under the Plan if your employer requires you to take remedial training with only "basic day" compensation and this results in a reduction in your

earnings. However, the following disciplinary reasons are excluded from coverage; if you are suspended or discharged for one or more of these reasons you will **NOT** be entitled to benefits under the Plan:

(1) conduct endangering the life or livelihood of a fellow employee;

(2) unavailability for duty; sleeping on duty; missing calls;

(3) insubordination;

(4) misuse, theft or destruction of property of the Participant's employer;

(5) falsification of reports;

(6) failure to take or pass a required examination;

(7) use, possession or evidence of intoxicants or illegal drugs while on duty or subject to duty; or

(8) discipline due to criminal or civil court action.

After reviewing the transcript of the hearing held by KCSR, the Plan Administrator of the DIPP denied Farhner benefits in a letter dated September 13, 2004, stating that "under Section 3.5(b)(3) of the plan document . . . , the Program does not cover discharges/suspensions for [insubordination]." Farhner appealed this decision to the Plan Administrator; however, his appeal was also denied on the same grounds. At all times, the Plan Administrator considered only the information obtained during the formal investigation conducted by KCSR, and it was not provided with (nor did it request) any other documentation to consider.

On November 30, 2004, the general chairman of the DIPP requested that a review committee reconsider the Plan Administrator's benefits determination. On December 9, 2004, the Chairperson of the review committee issued a final decision, upholding the denial of benefits. As cause, the review committee stated that the "issue [was] claimant's failure to comply with instructions and provide the requested information in a timely manner consistent with the FMLA."

On December 8, 2008, Farhner filed suit in the Northern District of Ohio, challenging the Plan Administrator's determination. The parties filed cross-motions for summary judgment. The district court granted the DIPP's motion for summary judgment on the grounds that the express language of the Plan supported the denial of benefits. Specifically, the district court found the Plan Administrator's decision to be "the result of a deliberate, principled reasoning process" and "supported by substantial evidence," quoting *Bennett v. Kemper Nat'l Serv., Inc.*, 514 F.3d 547, 552 (6th Cir. 2008). Because the evidence in the administrative record demonstrates that Farhner was discharged for insubordination, which is a stated exclusion under the Plan, the district court found that the Plan Administrator's decision was not arbitrary or capricious. In addition, the district court found it improper for Farhner to attempt to "litigate the lawfulness of his discharge by his employer" where KCSR "is not a party to the suit and is not the administrator of the Plan." Likewise, the district court found that Farhner could not offer any "policy provision or law requiring the Plan Administrator to review the basis of the stated reasons for discharge or discipline by the employer to determine if it was valid or not." Farhner timely appealed the district court's decision.

## II. Standard of Review

A challenge to an ERISA plan's denial of benefits should be reviewed de novo "unless the benefit plan gives the [Plan] [A]dministrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the [P]lan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, the parties do not dispute that the Plan grants such discretion to the Plan Administrator. In addition, the Plan specifically provides "the Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." Where the Plan grants such discretionary authority, the administrator's decision is reviewed under the "arbitrary and capricious" standard of review. *Id.*

The arbitrary and capricious standard is "the least demanding form of judicial review of administrative action." *Besten v. Delta Am. Reinsurance Co.*, 202 F.3d 267 (table), No. 98-6225, 1999 WL 1336061, at *2 (6th Cir. Dec. 22, 1999). Therefore, if the Plan Administrator's decision is supported by substantial evidence, then it should be upheld. *Id.* In other words, the Plan Administrator's decision should be "rational in light of the [P]lan's provisions." *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1993); *see also Davis v. Kent. Fin. Cos. Ret. Plan*, 887 F.3d 689, 693 (6th Cir. 1989) ("When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."). Nonetheless, this deferential standard is "tempered" by any possible conflict of interest where the Plan Administrator both determines eligibility and funds the Plan. *Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000).

Because Farhner appeals the district court's grant of summary judgment, we must review de novo the district court's ruling. *Glenn v. MetLife*, 461 F.3d 660, 665 (6th Cir. 2006). Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In other words, this Court must determine whether there is any genuine issue of material fact as to whether the Plan Administrator's actions were arbitrary and capricious. *Gismondi v. United Tech. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005). Farhner bears the burden of proving that the Plan Administrator's decision was arbitrary or capricious; otherwise, the decision of the Plan Administrator "must be sustained as a matter of law." *Gardner v. Central States, Se. and Sw. Areas Pension Fund, et al.,* 14 F.3d 601 (table), No. 93-3070, 1993 WL 533540, at *3 (6th Cir. Dec. 21, 1993). Our review is limited to the administrative record available to the Plan Administrator. *Garst v. Wal-Mart Stores, Inc.*, 30 F. App'x 585, 593 (6th Cir. 2002).

## III.  Analysis

We conclude that the district court correctly granted the DIPP's motion for summary judgment on the grounds that the express language of the Plan supported the denial of benefits.  Although Farhner argues that KCSR improperly terminated his employment in violation of the FMLA, and the Plan Administrator's review committee considered whether Farhner met his obligations under the FMLA when affirming the Plan Administrator's decision, the Court finds that the Plan Administrator was not required to look beyond the language of the Plan where the language of the Plan was unambiguous and the Plan did not require it to do so.  Thus, because the Plan Administrator's benefits determination was supported by the plain meaning of the Plan, such decision was not arbitrary or capricious.

### A.     Plain Language of Plan

"When interpreting ERISA plan provisions, general principles of contract law dictate that we interpret the provisions according to their plain meaning in an ordinary and popular sense.  In applying the 'plain meaning' analysis, we must give effect to the unambiguous terms of an ERISA plan."  *Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000) (internal citations and quotation marks omitted).  In other words, the Plan Administrator "must adhere to the plain meaning of [the Plan's] language as it would be construed by an ordinary person."  *Kovack v. Zurich Am. Ins. Co.*, 587 F.3d 323, 332 (6th Cir. 2009) (citing *Morgan v. SKF USA, Inc.*, 385. F.3d 989, 992 (6th Cir. 2004)).

Accordingly, in determining whether benefits were due under the Plan, the starting point is the language of the Plan itself.  *See Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1374 (6th Cir. 1994); *Callahan v. Rouge Steel Co.*, 941 F.2d 456, 460 (6th Cir. 1991) (explaining that "the most important factor to weigh is the language of the plan itself as known by the employees, or as the employees should have known").  Such review allows the Court to "construe [the] ERISA plan with a view toward effectuating its general purpose."  *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 850 (6th Cir. 2006).

Starting with the language of the Plan, the relevant portion explicitly provides that certain suspensions and discharges are excluded from coverage under the Plan. Specifically, section 3.5(b) states that "if you are suspended or discharged for one or more of these reasons," including insubordination, "you will **NOT** be entitled to benefits under the Plan." Here, the language of the Plan is unambiguous, and it clearly mandates where an employee is terminated by his employer on the grounds of insubordination, such employee is not entitled to benefits under the Plan.

Having determined that the language of the Plan is unambiguous, we next turn to whether the Plan Administrator had before it evidence that Farhner was suspended or discharged for insubordination. It is clear from the record, and the parties do not dispute, that Farhner was investigated by KCSR due to his failure to comply with the instructions given to him on May 25, 2004. Following such investigation and after a formal hearing, Farhner received a letter of dismissal on July 30, 2004, stating that he was being terminated for violating General Code of Operating Rule 1.6, which prohibits employees from being insubordinate, and for violating General Code of Operating Rule 1.13. As a result of the stated reasons for Farhner's discharge, the Plan Administrator found that Farhner should not receive income-replacement benefits under the Plan.

**B.      Looking Beyond Plain Language of the Plan**

Although we have determined that the plain language of the Plan supports the Plan Administrator's benefits determination, we will consider Farhner's argument that he should not have been denied benefits because KCSR terminated his employment in violation of the FMLA. However, we find this argument to be misplaced because there is no policy or case law that requires the Plan Administrator to look beyond the plain meaning of the Plan where the terms of the Plan unambiguously do not require the Plan Administrator to do so.

### 1.      Farhner's Contentions

Farhner argues that even though he was terminated on the grounds of insubordination, such termination was unlawful and the Plan Administrator should have looked beyond the plain meaning of the Plan to accurately determine whether Farhner's termination was proper. The FMLA entitles a qualifying employee to take leave if the employee has a serious health condition rendering the employee unable to perform essential job duties. *Culpepper v. BlueCross BlueShield of Tenn., Inc.*, 321 F. App'x 491, 495 (6th Cir. 2009). Before an employer can give FMLA leave, however, the employee must provide notice and a qualifying reason for the leave. *Id.* Whether the notice is sufficient depends on whether the employee provides enough information for the employer to reasonably conclude that the leave is needed for a serious health condition. *Branham v. Gannett Satellite Info. Network, Inc.*, 619 F.3d 563, 572 (6th Cir. 2010); *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 723 (6th Cir. 2003); *Gipson v. Vought Aircraft Indus., Inc.*, No. 09-6026, 2010 WL 2776842, at * 7 (6th Cir. July 13, 2010) ("The information that the employee convey[s] to the employer [must be] reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that render[s] him unable to perform his job").

Once the employee gives notice, the employer may request medical certification from a health care provider; however, this request "must be in writing and must detail the employee's specific obligation to provide certification and the consequences of failing to do so." *Branham*, 619 F.3d at 572; 29 C.F.R. §§ 825.301(b)(1)(ii), 825.305(d). In response, the employee must provide the certification in a timely manner or at least within fifteen days. 29 U.S.C. § 2613(a).

Farhner contends that KCSR's requests for additional medical documentation were not sufficient to trigger Farhner's duty to provide certification to KCSR. Rather, Farhner alleges that KCSR failed to meet its obligations under the FMLA, and therefore, Farhner was not insubordinate. Instead, he argues that his actions were protected by the law. As a result, Farhner asserts that the Plan Administrator's benefits determination

was arbitrary and capricious because the Plan Administrator should have looked beyond the stated reasons for Farhner's termination and determined that it was unlawful.

Even if Farhner's arguments regarding KCSR's obligations under the FMLA are meritorious, Farhner cannot identify, and the Court has not found, any cases to support his proposition that the Plan Administrator was required under the Plan to make an accurate determination regarding those obligations. Even *Besten v. Delta America Reinsurance Company*, which is factually similar, is distinguishable from this case. There, this Court found the Plan Administrator's denial of severance pay benefits was arbitrary and capricious because the Plaintiff-Appellant's termination was not proper. Specifically, the Plaintiff-Appellant's employment was terminated by his employer, Delta, on the grounds of insubordination after he wrote a memorandum to the president of the company "complaining about the denial of his request . . . to attend a tax update seminar." *Besten*, 1999 WL 1336061, at *1. As a result of Plaintiff-Appellant's discharge, he was denied severance pay benefits by Delta, who also served as the Plan Administrator. *Id.* This Court concluded that a finding of insubordination was not justified because "writing memoranda to management, supervisors, or personnel clerks appear[ed] to be reasonably consistent with the directives of the Delta Employee Manual." *Id.* at *5. Accordingly, Delta's decision to deny Plaintiff-Appellant severance pay benefits was held to be arbitrary and capricious. *Id.*

However, in *Besten*, the plain language that governed differed from the plain language in this case. There, "the terms of the Plan state[d] that benefits [would] be denied when . . . a beneficiary [was] dismissed for cause as defined in the Delta Employee Manual." *Id.* at *4. In other words, the benefits determination was directly intertwined with the decision to dismiss the Plaintiff-Appellant. Under the clear terms of the Plan, it was necessary for the Plan Administrator to look at the conduct of the potential beneficiary to determine if he was properly discharged for cause as defined in the employee manual. Here, the terms of the Plan are specifically defined by the plain language of the Plan itself. Therefore, the Plan Administrator needed to look only at the stated reason for Farhner's termination, not the underlying conduct, to determine if such

reason fell under the list of exclusions outlined by the Plan. *See also Cline v. Ret. Plan for the Glass Rock Plant & Millwood Plant of Oglebay Norton Indus. Sands, Inc.*, 346 F. App'x 8, 9 (6th Cir. 2009) (finding that the relevant inquiry was not whether Plaintiff was actually disabled at the time of termination, but whether "he was terminated because the employer considered him disabled," where the plain language of the Plan stated that "a participant who terminates employment as a result of a disability . . . shall be entitled to [d]isability [b]enefits hereunder").

This case is also distinguishable from *Besten* because there Delta served as both the Plaintiff-Appellant's employer and as the Plan Administrator. *Id.* at *1. Therefore, Delta had the ability to accurately ascertain the lawfulness of the Plaintiff-Appellant's discharge. In contrast, KCSR and the DIPP are two separate entities. Thus, the DIPP would not be a proper party to a suit alleging a violation of the FMLA, and it would not have the ability to properly defend against such type of suit.

## 2.    Review Committee's Decision

Furthermore, the fact that the Plan Administrator's review committee considered the lawfulness of Farhner's termination under the FMLA when making its decision is not determinative. Although the review committee went beyond the plain language of the Plan, such action did not modify the express terms of the Plan. Here, looking at the plain language of the Plan, it is clear that the Plan does not qualify the listed exclusions found in section 3.5(b) by providing, for example, that an employee's suspension or discharge must have been proper or lawful. The mere fact that the review committee attempted to make this determination does not change the requirement that the Plan Administrator must adhere to the plain meaning of the Plan when making its decision.

As a general proposition, it would not be sound for this Court to penalize a party for attempting to go beyond its duties as defined by a contract. Moreover, in a case such as this one, where the Plan Administrator did not make the termination decision and had no involvement in the termination decision, it would be imprudent to require the Plan

Administrator to look beyond the terms of the Plan to accurately ascertain the underlying facts where such action is not required by the language of the Plan itself.

Accordingly, the issue is not whether the Plan Administrator properly applied the law under the FMLA or whether Farhner was unlawfully terminated. Rather, we conclude that the Plan Administrator's decision was rational in light of the express terms of the Plan without further consideration. Although this case presents a unique issue for this Court, it is evident from the record that there are no genuine issues of material fact as to whether the Plan Administrator's decision was arbitrary or capricious. The stated reason for Farhner's discharge was insubordination, which was a listed exclusion under the Plan.

## IV.    Conclusion

For these reasons, we AFFIRM the decision of the district court.

———————————————

## CONCURRENCE

———————————————

RONALD LEE GILMAN, Circuit Judge, concurring.  I agree with the lead opinion that the Plan Administrator's decision to deny Farhner's benefits request was not arbitrary or capricious.  Despite my concurrence in the ultimate result reached, however, I disagree with portions of the lead opinion's analysis.

Under the arbitrary-and-capricious standard of review employed in this case, a Plan Administrator's decision must be upheld if it results from "a deliberate principled reasoning process and is supported by substantial evidence." *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010) (internal quotation marks omitted).  So long as there is a "reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Id.* (internal quotation marks omitted).

In this case, the Plan Administrator initially conducted a relatively cursory review to determine whether Farhner was discharged for insubordination.  The Plan Administrator simply looked at Farhner's claim report and KCS's letter of discipline, concluding that because KCS's stated reason for discharge was insubordination, Farhner was not entitled to benefits.  Farhner appealed this initial decision to the Plan Administrator's Review Committee.  The Review Committee then conducted an in-depth review of Farhner's discharge.  After reviewing the transcript of KCS's formal investigation that led to Farhner's discharge, the Committee concluded that "there has been no evidence presented to negate the fact that [Farhner] was, on several occasions, placed on notice to provide specific information with regard to the reason for a medical leave of absence.  [Farhner] failed to comply with the FMLA and . . . the written instructions of [KCS]."  The Plan Administrator, based on this more detailed review, upheld the original denial of benefits.

Instead of blindly relying on KCS's stated reasons for Farhner's discharge, the Plan Administrator ultimately reviewed the evidence and determined that Farhner was in fact insubordinate. Farhner's main contention on appeal is that this decision is inconsistent with the technical requirements of the FMLA. Although the administrative record does show some contradictory evidence regarding whether both Farhner and KCS complied with the FMLA, the evidence is not so one-sided that the Plan Administrator's decision to deny Farhner benefits can be considered arbitrary and capricious. *See Schwalm*, 626 F.3d at 312 (concluding that although the administrative record includes contradictory evidence, "the evidence suggesting that Schwalm suffered from a continuing disability is not so one-sided that the decision to deny benefits can be considered arbitrary or capricious").

My purpose in pointing out that the Plan Administrator ultimately conducted an independent review of Farhner's discharge is to highlight that this is not a case where the Plan Administrator blindly relied on the employer's stated reasons for its actions. Because the Plan Administrator in fact engaged in an independent review, the lead opinion did not need to reach the issue of whether the Plan Administrator was required to look beyond the language of the Plan and KCS's stated reasons for the discharge. The lead opinion's conclusion that the Plan Administrator had no obligation to conduct an independent review is therefore not necessary to its holding, and is thus dicta. *See United States v. Swanson*, 341 F.3d 524, 530 (6th Cir. 2003) ("[T]his holding might be considered dicta in that it was not necessary to the determination of the issue on appeal."). Moreover, the very fact that the Plan Administrator made an independent inquiry into the justification for Farhner's termination is evidence that it likely recognized its duty to do so under the Plan.

In sum, I concur in the judgment reached, but I respectfully disagree with portions of the lead opinion's analysis.